IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| FRANCIS E. ENGLISH,<br><br>            Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br><br>            Defendant. | CV-18-77-GF-BMM<br><br>**ORDER** |

## INTRODUCTION

Plaintiff Frank English ("English") filed his original Complaint in Montana State District Court on April 16, 2018. (Doc. 3). Defendant BNSF Railway Company ("BNSF") removed the case to federal court on May 18, 2018. (Doc. 1). English since filed an Amended Complaint alleging violation of Montana's Railroad Mismanagement statute, MCA § 39–2–703, intentional or negligent infliction of severe emotional distress, and punitive damages. (Doc. 62). There are several motions pending in this case. (Docs. 116, 118, 122, 128, 130, 141). The Court held a hearing on all pending motions on October 13, 2020. (Doc. 158). A bench trial is currently scheduled for November 17, 2020, at the federal courthouse in Great Falls, MT.

## ANALYSIS

**I.  BNSF's Motion for Reconsideration of Summary Judgment on Preemption (Doc. 116)**

English previously filed a Motion for Summary Judgment that the Railway Labor Act ("RLA") did not preempt his claims under the Railroad Mismanagement statute. (Docs. 58, 61). The Court granted the Motion for Summary Judgment on preemption for reasons stated in open Court. (Doc. 77). BNSF filed this Motion for Reconsideration, arguing that the development of the factual record indicates preemption of English's claims because they fall under the Collective Bargaining Agreement ("CBA"). (Doc. 117). The Court disagrees for substantially similar reasons to its previous ruling. The underlying facts and allegations of this case have not changed.

The Ninth Circuit clarified that "the crucial inquiry in determining whether a cause of action under state law is preempted by the RLA is whether the 'state-law claim is dependent on the interpretation of a CBA.'" *Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 864 (9th Cir. 2014) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262 (1994)). English alleges BNSF's scheduling system and the threat of discipline or firing is an intentional and dangerous act of mismanagement that caused or substantially contributed to his firing. (Doc. 62). Those claims do not require interpretation of the CBA because the record shows that they involve specific discipline and scheduling policies that are not subject to collective

bargaining. They are instead set by BNSF solely. Such a claim would fall under the "very broad language" of Montana's Railroad Mismanagement statute. *Winslow v. Montana Rail Link, Inc.*, 302 Mont. 289 (2005) (citing MCA § 39–2–703). The right of railway employees to sue based on negligence or mismanagement resulting in termination may be unusual, but that right is "undoubtedly recognized in Montana." *Wolfe*, 749 F.3d at 864. The Court will deny this motion.

II. **BNSF's Motion for Summary Judgment (Doc. 118)**

BNSF filed this Motion for Summary Judgment, arguing: 1) Montana's Railroad Mismanagement statute is unconstitutional as applied under the Equal Protection Clauses of the U.S. and Montana Constitutions; 2) the federal Hours of Service Act ("HSA") preempts the Railroad Mismanagement statute; 3) English failed to prove negligence; and 4) emotional distress and punitive damage claims should be dismissed as a matter of law. (Doc. 119). A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

BNSF has not met its burden to show that Montana's Railroad Mismanagement statute is unconstitutional as applied under the U.S. and Montana Equal Protect Clauses. Courts analyze equal protection claims with three steps: 1) identify the classes involved and determine if they are similarly situated; 2)

3

determine the appropriate level of scrutiny to apply to the challenged statute; and 3) apply that level of scrutiny to the challenged statute. *See Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018). BNSF asserts that Montana's Railroad Mismanagement statute treats railroad employers differently than similarly situated Montana employers, that rational basis review applies, and that the statute fails rational basis review. (Doc. 119 at 15–22).

Even if the Court were to accept BNSF's asserted class identification—an assertion that English provides facts to contest including other statutes singling out employers in similar ways—the Court remains skeptical of BNSF's assertion that the statute fails to pass rational basis review. "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993) (emphasis added). Where a state may have "plausible reasons" for its actions, the Court's "inquiry is at an end." *Id*. at 313–14. "This standard of review is a paradigm of judicial restraint." *Id*. at 314.

BNSF fails to identify any legislative history, legislative text, or case law over the nearly hundred-year history of this statute that would indicate the Montana state legislature lacked a plausible reason to regulate a large,

4

economically important, and uniquely dangerous business like the railroads. English provides many examples of potential bases for regulation. (Doc. 139 at 20–22). Judicial skepticism of regulation of particular business sectors would destabilize the marketplace by opening entire subsections of foundational and long-accepted Montana laws to potential challenge. Such an undertaking would exceed the proper role of the courts.

It is not clear from the record that HSA preempts Montana's Railroad Mismanagement statute. Courts employ a foundational presumption against preemption as a canon of construction. Federal law should be read to preempt state law only if "that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). HSA serves "to promote railroad safety by limiting the number of hours a train crew may remain on duty and by requiring railroads to provide crew members with a certain number of off-duty hours for rest between shifts." *Bhd. of Locomotive Eng'rs v. Atchison, T. & S.F. R.R.*, 516 U.S. 152, 153–54 (1996). The statute provides limitations on "duty hours of train employees." 49 U.S.C. § 21103. It also empowers the Secretary of Transportation to address fatigue through regulations. *See id.* § 21109 (a)(1), (2), and (5). The HSA includes a savings clause to preserve claims based on "State law, regulation, or order" even if incompatible with the federal law. *See id.* § 21106(b).

BNSF argues that "Congress has completely occupied the regulation of work/rest periods and fatigue." (Doc. 119 at 24). BNSF provides cases involving state laws prescribing particular rest periods. None of the examples involve state-based tort claims like Montana's Railroad Mismanagement statute. The savings clause, lack of case law, and inadequate record showing preemption all argue against summary judgment on this issue.

The facts in dispute preclude summary judgment on the negligence claim as well as the emotional distress and punitive damage claims. BNSF first argues that the statute of limitations bars English's claims. (Doc. 119 at 25). English's claims are not barred by the Railroad Mismanagement statute because he challenges a set of management practices that led to his *termination*. English filed this action within the two-year limit following his termination. BNSF next argues that English fails to prove the necessary negligence elements of duty, breach, and causation. *See id.* at 25–30. Substantial facts remain in dispute regarding these elements that bar summary judgment, including evidence of the duty owed, the facts underlying individual disciplinary actions, and how BNSF's management policies over scheduling and discipline relate to overall management of its railways. The factual disputes weigh against summary judgment. Finally, facts that would prove emotional distress as well as the potential to seek punitive damages are in dispute. (Doc. 139 at 27–31). The Court will deny this motion.

## III. English's Motion for Summary Judgment and Request for Relief for Failure to Supplement (Doc. 122)

English filed this Motion for Summary Judgment, arguing that BNSF made "misrepresentations . . . to procure two of the five strikes" that ultimately led to English's termination, and that BNSF was late in its production of certain evidence that would entitle English to summary judgment under Fed. R. Civ. P. 37(c). (Doc. 123 at 2–4). A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The record indicates factual dispute over the circumstances surrounding the two specified strikes, including whether English waived investigation, whether BNSF made misrepresentations, and the broader impact of BNSF's disciplinary process. (Docs. 123 at 4–11; 143 at 19–21). The factual disputes involved weigh against summary judgment. English's further assertions seeking summary judgment based on Fed. R. Civ. P. 37(c) remain inappropriate. There have been significant discovery disputes over this evolving litigation. It is not clear that BNSF engaged with English in bad faith or that English was prejudiced by allegedly late productions. The Court will deny this motion.

## IV. English's Motion for Sanctions (Doc. 128)

English filed a motion for sanctions against BNSF. (Doc. 128). English alleges that BNSF withheld certain information from an employee discipline

database. (Doc. 129). English now raises the claims of an unrelated attorney that BNSF has concealed information. *Id.* BNSF responds that it has provided information that English requested on similarly situated employees, and that other information—such as those subject to discipline for violating rules due to issues related to fatigue—"is not the type of information" stored in the system. (Doc. 145).

This motion invokes a longstanding discovery dispute. The Court previously has weighed in on this dispute, and BNSF represents that it has complied with requests made in good faith. *See id.* English does not clarify how BNSF has failed to comply with discovery. English fails to point to any specific request to which BNSF has not responded. English fails to clarify what information in particular BNSF has failed to produce. It remains unclear what information and value this unrelated attorney would provide to the dispute. English fails to meet the burden needed to issue sanctions. The Court will deny this motion.

V.  **BNSF's Motion in Limine (Doc. 130)**

BNSF filed a motion in limine to exclude the introduction of five categories of evidence from trial. (Doc. 130). BNSF seeks the exclusion of: 1) Behavior Science Technology ("BST") Reports assessing BNSF's organizational culture; 2) testimony from English's expert Jeffrey Kurtz; 3) evidence concerning discipline for which English took waivers; 4) evidence of English's future lost earnings based

8

upon his BNSF earnings; and 5) allegedly irrelevant or cumulative evidence from a variety of listed witnesses.

The Court will deny this motion without prejudice because it proves superfluous in a bench trial. "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area. In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009). "Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, 'coals to Newcastle,' asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence." *Id.* BNSF may raise these objections at the bench trial, and the Court can resolve any evidentiary issues at that time.

## VI. English's Motion to Defer Ruling on BNSF Motion for Summary Judgment (Doc. 141)

English filed a motion to defer consideration of BNSF's Motion for Summary Judgment. (Doc. 141). English raised alleged delays in the production of evidence that made facts unavailable to English at the time of the filing. (Doc. 142 (citing Fed. R. Civ. P. 56(c))). As described above, the Court denies BNSF's Motion for Summary Judgment in this Order. English's motion is moot. The Court will deny this motion.

## ORDER

Accordingly, **IT IS ORDERED** that:

- BNSF's Motion for Reconsideration of Summary Judgment on Preemption (Doc. 116) is **DENIED**;

- BNSF's Motion for Summary Judgment (Doc. 118) is **DENIED**;

- English's Motion for Summary Judgment and Request for Relief for Failure to supplement (Doc. 122) is **DENIED**;

- English's Motion for Sanctions (Doc. 128) is **DENIED**;

- BNSF'S Motion in Limine (Doc. 130) is **DENIED** without prejudice;

- English's Motion to Defer Ruling on BNSF Motion for Summary Judgment (Doc. 141) is **DENIED** as moot.

Dated the 20th day of October, 2020.

_____
Brian Morris, Chief District Judge
United States District Court